■ In the Matter of RLI INSURANCE COMPANY, SURETY DIVISION, Appellant, v NEW YORK STATE DEPARTMENT OF LABOR et al., Respondents. [722 NYS2d 618] —Carpinello, J. Appeal from a

---

judgment of the Supreme Court (Canfield, J.), entered May 3, 2000 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to compel respondent Department of Labor to withdraw its notice of cross-withholding and to enjoin respondent Board of Education of the Queensbury Union Free School District from releasing any funds pursuant to such notice.

At issue is the question of whether a surety, which has posted performance and payment bonds on a public improvement project and which claims subrogation rights after paying completing contractors, laborers and materialmen, has a claim to funds still in the possession of the project owner superior to a claim filed by respondent Department of Labor (hereinafter respondent) for underpaid wages rendered on an *unrelated* project. Specifically, on May 5, 1998, D.C. White Company, Inc. (hereinafter White) entered into a public improvement contract with the Queensbury Union Free School District (hereinafter School District). Petitioner posted a performance bond to ensure the completion of the project and a payment bond to ensure full payment for all labor performed and materials furnished. On August 21, 1998, the School District's construction manager notified White that it was in default on the contract. Petitioner alleges that it thereafter expended in excess of $176,000 to complete the project and to pay laborers and materialmen. Petitioner further alleges that because it is subrogated to the rights of these completing contractors and laborers and materialmen, who are trust fund beneficiaries under Lien Law article 3-A, it has a superior claim to any funds still held by the School District. Accordingly, petitioner commenced this CPLR article 78 proceeding to compel payment of these funds.

The proceeding was opposed by respondent, which argued that it has a superior claim to these funds by virtue of Labor Law § 220-b (2) (a) (1). This provision empowers respondent to collect wages not paid at the prevailing rate on public improvement projects by instructing public entities to withhold funds otherwise due contractors. In the case at bar, respondent served the School District with two notices to withhold payment from White, one for $19,150.15 for underpaid wages due and owing on the subject project and a second for $27,000.23 for underpaid wages due and owing on an unrelated project. Petitioner acknowledges the superiority of respondent's claim for underpaid wages rendered on the subject project, but argues that respondent's claim for wages owed by White on the unrelated project cannot be superior to its own. Supreme Court denied the petition finding no distinction in Labor Law

§ 220-b (2) (a) (1) between the priority of underpaid wages earned on projects where funds are still due to the contractor or underpaid wages earned on unrelated projects where no funds remain in possession of the owner. Since the clear intent of Labor Law § 220-b (2) (a) (1) is to vest in respondent the ability to seize funds for prevailing wage violations on public improvement projects from *any* public entity which still retains funds due the offending contractor (whether or not earned on that project), we perceive no error in Supreme Court's reasoning.

Moreover, in resolving this controversy, we need look no further than the rationale employed by the First Department in *City of New York v Cross Bay Contr. Corp.* (235 AD2d 10, *revd on other grounds* 93 NY2d 14). In this case, the Court held that funds withheld under Labor Law § 220-b (2) for the benefit of workers underpaid by a contractor constitute a statutory trust and the rights of the workers to said funds are superior to the claims of a surety which made payments under performance and payment bonds (*id.*, at 14). Notably, the prevailing wage claims there at issue were *not* limited solely to wages earned on the subject project, but rather arose "under various public improvement contracts" (*id.*, at 12). We find nothing in petitioner's arguments on appeal which would cause us to disagree with the First Department's analysis, including petitioner's assertion that *Canron Corp. v City of New York* (89 NY2d 147) mandates a contrary result. The reference in that case to a prohibition against subjugating Lien Law article 3-A trust claims to defenses "unrelated to the improvement contract" (*id.*, at 158) has no applicability to the instant dispute. The defenses involved in that case were personal to the contractor and certainly not the legal equivalent of the statutory trust claims which respondent seeks to enforce in the case at bar. In sum, we see no conflict in the Legislature's grant of a statutory trust fund status to underpaid wage claims pursuant to Labor Law article 8 which is superior to the statutory trusts created under Lien Law article 3-A, especially since "payment of wages and supplements due laborers on a public improvement are two of the purposes of [the latter] trusts" (*Palmer Constr. v Hines*, 154 Misc 2d 248, 251).

Cardona, P. J., Crew III, Peters and Spain, JJ., concur. Ordered that the judgment is affirmed, without costs.